UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                              :
DIBISSA B. TOLESSA,
                                                              :
                                        Plaintiff,                    05 Civ. 9492 (CM) (DF)
                                                              :
              -against-                                        **REPORT AND**
                                                              :    **RECOMMENDATION**
NEW YORK HUMAN RESOURCES
ADMINISTRATION,                                                :

                                        Defendant.            :
------------------------------------------------------------------------X

**TO THE HONORABLE COLLEEN MCMAHON, U.S.D.J.:**

         This *pro se* discrimination case was referred to me by the Honorable Richard C. Casey

for general pre-trial supervision and to report and recommend on dispositive motions.

(Dkts. 2, 11.)[1]  The case was commenced by the November 9, 2005 filing of a Complaint by

plaintiff Dibissa B. Tolessa ("Tolessa") against his purported former employer, defendant New

York City Human Resources Administration ("HRA"), alleging that HRA violated Title VII,

42 U.S.C. §§ 2000e to 2000e-17 ("Title VII") by, *inter alia*, failing to promote him to a

permanent position, on the basis of his race, color, national origin, and religion.  (*See* Complaint,

dated Nov. 8, 2005 ("2005 Compl.") (Dkt. 1), ¶¶ 4,7,8.)  The 2005 Complaint also alleges that

HRA unlawfully discriminated against Tolessa in the terms and conditions of his employment, and

ultimately terminating his employment, and in subjecting Tolessa to unlawful retaliation.  (*See*

*id.* ¶ 4.)

_____

         [1] On May 18, 2007, the case was reassigned to the Honorable Colleen McMahon.
(Dkt. 21.)

Currently before the Court is a motion by HRA to dismiss the Complaint.  (Dkt. 14.) Specifically, HRA has moved pursuant to Fed. R. Civ. P. 12(b)(1) and (6) to dismiss Tolessa's race and color claims for lack of subject matter jurisdiction, asserting that Tolessa failed to exhaust those claims administratively prior to commencing this action.  Beyond that, HRA has also called to the Court's attention the fact that, in 2006, Tolessa filed a second Complaint with this Court, which was dismissed by the Court *sua sponte* under 28 U.S.C. § 1915(e)(2) as frivolous and as failing to state a claim.[2]  Based on that ruling, HRA further argues that Tolessa's 2005 Complaint, which, in certain respects, closely resembles his later, dismissed pleading, should be dismissed in its entirety on the same grounds – *i.e.,* as frivolous and as failing to state a claim – and also on the grounds of *res judicata.*

For the reasons set forth below, I respectfully recommend that HRA's motion to dismiss be granted with respect to Tolessa's termination and retaliation claims, which not only appear to be directed primarily at parties not named as defendants in this action, but also appear to be based on allegations virtually identical to those made in Tolessa's 2006 Complaint and already found by the Court to be frivolous and inadequate.  I further recommend, however, that HRA's motion to dismiss be denied as to the other claims pleaded in Tolessa's 2005 Complaint, which appear to be more straightforward claims for discrimination by HRA in the terms and conditions of Tolessa's employment and for a discriminatory failure to promote.  Finally, I recommend that Tolessa's race and color claims not be dismissed as administratively unexhausted.

---

[2] *See* Order of Dismissal dated Feb. 10, 2006 ("Order of Dismissal"), in *Tolessa v. The FBI and The NYPD*, No. 06 Civ. 1153, attached to Notice of Motion to Dismiss, filed Nov. 21, 2006 ("Notice of Motion") (Dtk. 14), as Ex. E (dismissing Complaint filed Feb. 10, 2006 ("2006 Compl."), attached to Notice of Motion as Ex. D).

## BACKGROUND

### A.    Factual Background

Tolessa alleges that he worked at HRA as a temporary employee from May 1998 until May 2004,[3] and that, from May 2000 to May 2004, all of his similarly-situated co-workers were promoted by HRA to permanent positions, while only he was not.  (*See* 2005 Compl. ¶ 8.) Tolessa asserts that he was not promoted even though he and the promoted co-workers had worked on the same projects together, and that these projects required the "same qualifications." (*See* 2005 Compl., Attachment "5,"[4]  ¶¶ 1-3.)  According to Tolessa, who identifies himself as an Ethiopian of the Orthodox Christian faith (*see* 2005 Compl., ¶ 7; *see also* discussion of Tolessa's administrative charge, *infra* at 4), there was one occasion, in June 2002, when he was told by his supervisor at HRA that he had been promoted, but that it turned out this promotion was in fact "conditioned on [Tolessa's] accepting [of a] religion" not his own (*see* Attachment "5," ¶¶ 2-3). When Tolessa "refused to accept such a condition," HRA purportedly withdrew his promotion, despite having never "imposed such a condition" upon any other "employee it hired or promoted."  (*See id.*, ¶ 3.)

Tolessa appears to complain that HRA "singled [him] out for discrimination" (Attachment "5," ¶ 1) because of his religion and also because of his race, color, and national origin (*see* 2005 Compl., ¶ 7).  This, Tolessa asserts, resulted in his receiving "differential"

---

[3] Tolessa alleges that he was hired by a temporary employment agency, which had contracted with the City of New York to provide the City with temporary employees, and that the temporary employment agency assigned him to work at HRA.  (*See* 2005 Compl., ¶ 8.)

[4] "Attachment '5'" refers to a document hand-written by Tolessa that is labeled "5" and is annexed to the 2005 Complaint.  (*See* 2005 Compl., ¶ 8 (referring to Attachment "5"; *see infra* at 6.)

pay and treatment and suffering "abuses and discrimination."  (*See* 2005 Compl., ¶ 7, Attachment "5," ¶¶ 1,4.)

In allegations that seem somewhat removed from his core complaints of job discrimination, Tolessa also seems to suggest that, in retaliation for his filing of a complaint with the Civilian Complaint Review Board ("CCRB"), both the Federal Bureau of Investigation ("FBI") and the New York City Police Department ("NYPD") tried to cause him harm, and then orchestrated or influenced his ultimate termination from his position with HRA.  (*See* 2005 Compl., ¶ 4; Attachment "5," ¶¶ 5-7.)

### B.   Procedural Background

#### 1.   Tolessa's Administrative Complaint

After his termination on May 29, 2004, Tolessa filed an administrative charge, in the form of a verified complaint, with the New York State Division of Human Rights ("SDHR") on January 24, 2005, claiming that HRA had discriminated against him on the basis of his national origin and creed, and therefore had violated Title VII and the New York State Human Rights Law.  (*See* Verified Complaint filed with SDHR, sworn to Jan. 24, 2005 ("SDHR charge"), ¶ 1, attached to Notice of Motion as Ex. B.)  Tolessa asserted that, even though he had received "nothing but satisfactory performance evaluations," HRA had "not promoted" him to a permanent position and had later terminated him, because he was "an Orthodox Christian and African."  (*See id.*, ¶¶ 1, 5.)  In describing the circumstances of this alleged failure to promote, Tolessa asserted:

> On June 10, 2002, it was announced that Anabel "Doe" (creed unknown, Puerto Rican) and I were promoted permanently.  However, Ms. "Doe" was promoted, and I was not.  Between June 10, 2002 and May 29, 2004, I was not promoted to [a permanent position].  It should be noted that several other temporary [workers

with the same title as Tolessa] were promoted to [permanent positions], and none of these individuals are African nor are they Orthodox Christians to my knowledge.

(*See id.*, ¶ 3.)

On April 15, 2005, the SDHR dismissed Tolessa's complaint after its investigation found no probable cause to believe that any of the alleged unlawful discriminatory conduct had in fact occurred.  (*See* Determination and Order After Investigation, dated Apr. 15, 2005, at 1, attached to Notice of Motion as Ex. C.)[5]  On August 30, 2005, the Equal Employment Opportunity Commission ("EEOC") adopted the SDHR's decision and issued Tolessa a Right-to-Sue Letter.[6] (*See* EEOC Dismissal and Notice of Rights**,** dated Aug. 30, 2005, attached to 2005 Compl.)

## 2.    <u>The Instant Action</u>

In November 2005, Tolessa commenced this action by filling out a form complaint for employment discrimination provided by the Court's *Pro Se* Office.  (*See* 2005 Compl.)  Naming HRA as the sole defendant and alleging violations of Title VII, Tolessa checked the following categories of alleged discriminatory conduct:  (1) "Termination of my employment"; (2) "Failure to promote me"; (3) "Unequal terms of my employment"; and (4) "Retaliation."  (*See id.*, ¶ 4.) Next to "Retaliation," Tolessa wrote in parenthesis:  "By the FBI and the NYPD for my [complaint] to the [Civilian Complaint Review Board]."  (*Id.*)

---

[5] Additionally, the SDHR found that, as a temporary employee, Tolessa was not eligible to be "promoted."  (*Id.*)

[6] Tolessa had authorized the SDHR to accept the charge on behalf of the EEOC.

In indicating the grounds upon which HRA discriminated against him, Tolessa checked the following categories:  "race," "color," "national origin," and "religion."  (*See id.*, ¶ 7.)[7] Tolessa asserted that, as a result of HRA's discriminatory conduct, he was entitled to back pay, damages, and to be "reinstated in [his] work immediately."  (*See id.*, p. 5.)

Tolessa attached two hand-written documents to his 2005 Complaint.  In one, an attachment simply entitled "5," Tolessa continued, in numbered paragraphs, his allegations from paragraph 8 of the 2005 Complaint, largely alleging facts pertaining to his failure to promote claim, unequal terms of employment claim, and explaining the manner in which he was terminated.  (*See* 2005 Compl., ¶ 8 (noting allegations in paragraph as "continued on the memo marked '5'").)  Towards the end of his attachment, however, Tolessa included three paragraphs that focused not on the conditions of his employment *per se,* but rather on purported conspiratorial conduct by the FBI and NYPD:

> 5)  On 5/25/04, the Conspirators plotted to fire me by killing me:  I left my locked bag at my desk as usual and went out to lunch.  They obtained [a] duplicate key, unlocked my bag, put lethal poisons in my water bottle, and locked the bag.  But, they made some errors that helped me suspect foul play, detect the poisons, and escape the murder.
>
> 6)  Three days later (5/29/04), when what they expected – which is my death – didn't happen, the plotters threw me out of work.
>
> 7)  All of these crimes and conspiracies against me are orchestrated by the FBI and the NYPD who caused the HRA and the Administration to join them against me.

---

[7] Next to both the "race" and "color" categories, Tolessa wrote "black"; next to "national origin," he wrote "Ethiopian"; and beside "religion," he noted, in parenthesis, "Especially Religion!"  (*See id.*, ¶ 7.)  Although Tolessa wrote his age as "47" in the "age" category, he did not check the box for that category (*id.*), and it does not appear that he is alleging age discrimination in this action.

(*See* Attachment "5," ¶¶ 5-7.)

In his second attachment, which Tolessa titled "U.S. District Court Southern District of New York" and "Dibissa Toless [*sic*] vs. The FBI And the NYPD," Tolessa went on in this vein, at much greater length, accusing the FBI and NYPD of, *inter alia*, "plott[ing] to impose religion" on him, as well as "suffocating" and "lynching" him.  (*See* document titled "U.S. District Court Southern District of New York" and "Dibissa Toless [*sic*] v. The FBI And the NYPD," dated Nov. 8, 2005 ("FBI/NYPD Attachment"), attached to 2005 Compl.)  This alleged conduct by the FBI and NYPD, Tolessa claimed, arose from his involvement in a "racist sect" in "rural Pennsylvania," and from a campaign of harassment by the FBI and NYPD designed to return him to the "sect."  (*See id.* at first unnumbered page.)  In this attachment, Tolessa requested an order against the FBI and NYPD precluding them "from poisoning [his] . . . rooms," and an "Order reinstating [him] in [his] work . . . ."  (*See id.* at second unnumbered page.)  In the FBI/NYPD Attachment, Tolessa did not mention HRA or the nature of his work assignment there.

Together with his 2005 Complaint, Tolessa filed a motion for leave to proceed *in forma pauperis,* which was granted by the Court (Casey, J.) on March 2, 2006.  (Dkt. 6.)

### 3.   Tolessa's Second Federal Action

While the 2005 action was pending, Tolessa commenced a separate action in this Court on February 10, 2006, by filing a Complaint naming the FBI and NYPD, but not HRA, as defendants.  (*See* 2006 Compl.)  The substance of the 2006 Complaint was similar to, but more detailed than, the FBI/NYPD Attachment to the 2005 Complaint.  In the 2006 Complaint, Tolessa, again proceeding *pro se*, alleged First and 14th Amendment violations based on the

NYPD's and FBI's "intimidation," "blackmail," and "attempted murder," of him, as well as their attempt to "impose religion" on him.  (*Id.* at 1-2.)[8]  Tolessa again requested a restraining order against the defendants, and he repeated his allegation that his case arose from his involvement with a racist "sect."  (*Id.* at 1, 4.)  Tolessa asserted that, when he "fled" to New York to escape abuse from the racist sect members, the FBI and NYPD "confronted" him and "attempt[ed] to induce" him to return to the sect.  (*Id.* at 1-2.)  Specifically, Tolessa alleged:

> But, it is after [the] 9/11 terrorist attack that the FBI and the NYPD did quickly use the attack as a blackmail against me to force me to return to that sect and to reimpose its religion on me.  But I refused to be blackmailed and they are bent on lynching me.
>
> . . . [E]ver since then, [the defendants] are conducting three types of campaigns against me:  [i]ntimidation[], pressure[], and attempted murders."

(*Id.* at 2.)  Tolessa asserted that these "intimidation" tactics included the NYPD "terroriz[ing]" him at his apartment by firing a gun in the air, "aggressively screeching their vehicles," and yelling insults at him while he walked outside.  (*Id.*)  Tolessa also made several references to his job in this Complaint, claiming that the police worked "[i]n collusion with [his] employers and the administration" to "use [his] work place[] as the battleground against [him]."  (*Id.* at 3.)[9]  As in the FBI/NYPD Attachment, Tolessa did not, however, mention where he worked or the type of job he held.

As he had with his 2005 Complaint, Tolessa filed a request for leave to proceed *in forma pauperis* in connection with his 2006 Complaint.  By Order dated February 10, 2006,

---

[8] The pages of Tolessa's 2006 Complaint are unnumbered, but, for ease of reference, the Court will reference them herein as if numbered.

[9] Tolessa also stated that the defendants plotted to "kill [him] on the job."  (*Id.* at 3.)

then-Chief Judge Mukasey granted that request, but *sua sponte* dismissed the 2006 Complaint as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i), and as failing to state claim upon which relief could be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).  (*See* Order of Dismissal.)

### 4.   HRA's Motion To Dismiss the 2005 Complaint

On November 21, 2006, HRA filed its motion to dismiss the 2005 Complaint.  (*See* Notice of Motion (Dkt. 14); Memorandum of Law in Support of Defendant's Motion to Dismiss the Complaint, filed Nov. 21, 2006 ("Mem.") (Dkt. 15).)[10]  Tolessa opposed the motion (*see* Memorandum of Law in Opposition [to] Defendant's Motion to Dismiss, filed Dec. 15, 2006 ("Opposition") (Dkt. 16)), and HRA filed a reply (s*ee* Reply Memorandum of Law in Support of Defendant's Motion to Dismiss the Complaint, filed Jan. 3, 2007 ("Reply") (Dkt. 17)).

### DISCUSSION

## I.   CERTAIN, BUT NOT ALL, OF TOLESSA'S CLAIMS SHOULD BE DISMISSED UNDER 28 U.S.C. § 1915(e).

HRA argues that, in light of the Court's dismissal of Tolessa's 2006 Complaint as frivolous and failing to state a claim, his 2005 Complaint should also be dismissed, under 28 U.S.C. § 1915(e) or, alternatively, under the doctrine of *res judicata*.  For the following reasons, these arguments are largely, although not entirely, persuasive.

---

[10] As Tolessa points out (*see* Opposition, at 4), HRA's motion is untimely because it was filed four days after the November 17, 2006 Court-ordered deadline.  (*See* Notice of Motion and Mem., stamped as "Filed" by U.S. District Court, S.D.N.Y. on Nov. 21; *see also* Memo Endorsed Letter to Court from Amy Grossberg, Esq., dated Nov. 3, 2006 (Dkt. 13) (extending deadline for filing and serving motion from Nov. 3 to Nov. 17).)  Nonetheless, the Court will consider the merits of the motion, given that the grounds for granting it in part could be, in any event, raised *sua sponte* by the Court, in light of Tolessa's *in forma pauperis* filing of the 2005 Complaint.  *See, e.g.*, *Carney v. New York State Division of Hous. & Cmty. Renewal*, 976 F. Supp. 259, 262 (S.D.N.Y. 1997) (dismissing *informa pauperis* Complaint *sua sponte*, under 28 U.S.C. § 1915(e)(2)(B)).

A.     **Applicable Legal Standards**

     1.     **"Frivolous or Malicious" Complaints
Under 28 U.S.C. § 1915(e)(2)(B)(i)**

Under 28 U.S.C. § 1915(e)(2)(B)(i), the Court must dismiss an *in forma pauperis* complaint if it is "frivolous or malicious."  This statute was adopted as a method to "screen out" litigants who abuse the privilege of being able to file an action in federal court without paying the attendant administrative costs.  *Sleigh v. Charlex, Inc.*, No. 03 Civ. 1369 (MBM), 2004 U.S. Dist. LEXIS 19118, at *20 (S.D.N.Y Sept. 14, 2004) (citing *Denton v. Hernandez*, 504 U.S. 25, 32 (1992)); *accord Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (a court's "role in ensuring that an *in forma pauperis* complaint is non-frivolous is meant to replace the role played by court costs and filing fees in deterring frivolous complaints").  An action is frivolous when the claim is "based on an indisputably meritless legal theory," or if "the 'factual contentions are clearly baseless,' such as when allegations are the product of delusion or fantasy."  *Nance*, 912 F.2d at 606 (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)); *see also Denton*, 504 U.S. at 33 ("[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible.").[11]

---

[11] For example, a *pro se* plaintiff's action was dismissed as frivolous where the plaintiff asserted that she was a "cyborg" receiving telepathic communication and alleged, *inter alia*, that the defendants, which included Jimmy Carter, Bill Clinton, and Ross Perot, had conspired to reinstitutionalize slavery.  *Tyler v. Carter*, 151 F.R.D. 537, 537-38 (S.D.N.Y. 1993), *cited in Sleigh*, 2004 U.S. Dist. LEXIS 19118, at *20.

### 2.     28 U.S.C. § 1915(e)(2)(B)(ii) and Fed. R. Civ. P. 12(b)(6)

Under 28 U.S.C. § 1915(e)(2)(B)(ii), a court is also required to dismiss an *in forma pauperis* action if it "fails to state a claim on which relief may be granted."  *See Cruz v. Gomez*, 202 F.3d 593, 596 (2d Cir. 2000).  The standard for reviewing a complaint under this statute is the same as that under Fed. R. Civ. P. 12(b)(6).  *Salazar v. Dembin*, No. 04 Civ. 4572 (NG) (LB), 2005 U.S. Dist. LEXIS 3140, at *5 (E.D.N.Y. Feb. 23, 2005).

In deciding a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept all factual allegations in the complaint as true and draw all inferences in the plaintiff's favor. The issue is not whether the plaintiff will ultimately prevail, but whether his claim, as pleaded, is sufficient to afford him the opportunity to proceed on the evidence.  *See Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998).  In an employment discrimination case, such as this one, the plaintiff is not required at the pleading stage to establish a *prima facie* case of discrimination to survive a motion to dismiss.  *Swierkiewicz v. Sorema*, 534 U.S. 506, 510 (2002).  Instead, under the notice pleading requirements of Fed. R. Civ. P. 8(a), a complaint must only consist of "a short and plain statement of the claim showing that the pleader is entitled to relief."  *Id.* at 508. This statement must simply give the defendant "fair notice" of what the plaintiff's claim is and the "grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (internal quotation marks and citation omitted).

Nonetheless, in the recent *Bell Atlantic* decision, the Supreme Court has held that, to withstand a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that

is plausible on its face." *Id.* at 1974.[12]  The Second Circuit has interpreted *Bell Atlantic* as imposing a plausibility requirement on pleadings, but not altering the basic Rule 8(a)(2) notice pleading standard.  *Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007); *see also Bush v. O.P.E.I.U. Local 153*, No. 05 Civ. 7012 (RJH), 2007 U.S. Dist. LEXIS 59647, at *2-3 (S.D.N.Y. Aug. 15, 2007) (applying *Bell Atlantic* in case with Title VII claims; citing *Iqbal*, 490 F.3d at 157-58).[13] Specifically, the Second Circuit has explained that *Bell Atlantic* does not require a "universal standard of heightened fact pleading, but [instead requires a] flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal*, 490 F.3d at 157-58; *accord McIntosh v. Covenant House*, No. 05 Civ. 9973 (CM), 2007 U.S. Dist. LEXIS 50257, at *7 (S.D.N.Y. Jun. 28, 2007).

It still remains true that, when a plaintiff is proceeding *pro se*, the Court must construe the pleadings liberally, *Erickson*, 127 S. Ct. at 2200; *Branham v. Meachum*, 77 F.3d 626, 628-29 (2d Cir. 1996), and must "interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see Hughes v. Rowe*, 449 U.S. 5, 10 (1980) (a *pro se* party's pleadings must be liberally construed in his favor and are held to a less stringent

---

[12] *Bell Atlantic* expressly rejected the frequently quoted standard from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed . . . unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim." *Bell Atlantic*, 127 S.Ct. at 1968-69.

[13] *Iqbal* noted that *Bell Atlantic* "emphasized the continued viability" of *Swierkiewicz*, which had rejected a heightened pleading standard in a Title VII discrimination action. *Iqbal*, 490 F.3d at 156-58.  The Second Circuit also observed that, in *Erickson v. Pardus*, 127 S. Ct. 2197 (2007) (a case involving a *pro se* plaintiff, decided after *Bell Atlantic*), the Supreme Court held that alleging "[s]pecific facts" was "not necessary" in order to survive a motion to dismiss. *Iqbal*, 490 F.3d at 157 (citing *Erickson*, 127 S. Ct. at 2200.)

standard than the pleadings drafted by lawyers); *Simmons v. Abruzzo*, 49 F.3d 83, 87 (2d Cir. 1995) ("The complaint of a *pro se* litigant is to be liberally construed in his favor.") (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  This is especially true in the context of civil rights complaints.  *See Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001).

On a motion to dismiss pursuant to Rule 12(b)(6), the Court limits its consideration to: (1) factual allegations in the complaint; (2) documents attached to the complaint as an exhibit or incorporated in it by reference; (3) matters of which judicial notice may be taken;[14] and (4) documents that are "integral" to the complaint.  *Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (citing *Brass v. American Films Technologies*, 987 F.2d 142, 150 (2d Cir. 1993); *Chambers v. Time Warner Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).  The mandate that a *pro se* plaintiff's complaint be construed liberally makes it additionally appropriate for the Court to consider the factual allegations in the plaintiff's opposition materials to supplement the allegations in the complaint.  *See Johnson v. Wright*, 234 F. Supp. 2d 352, 356 (S.D.N.Y. 2002); *Burgess v. Goord*, No. 98 Civ. 2077 (SAS), 1999 WL 33458, at *1 n.1 (S.D.N.Y. Jan 26, 1999).

### 3.   The Doctrine of *Res Judicata*

The doctrine of *res judicata* serves to "prevent parties from contesting matters that they had a full and fair opportunity to litigate, thereby conserving judicial resources and protecting parties from the expense and vexation of multiple lawsuits."  *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).  Generally, *res judicata* is an affirmative defense pleaded in a defendant's answer.  When, however, all the relevant facts are shown by court records, of which

---

[14] The Court takes judicial notice of prior court records and decisions.  *See Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992).

the Court may take judicial notice, the defense may be upheld on a motion to dismiss. *Day*, 955 F.2d at 811; *see also Thompson v. County of Franklin*, 15 F.3d 245, 253 (2d Cir. 1994). "Under the doctrine of *res judicata*, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *St. Pierre v. Dyer*, 208 F.3d 394, 399 (2d Cir. 2000) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)) (internal quotation marks omitted).[15]

For purposes of *res judicata*, "the effective date of a final judgment is the date of its rendition, without regard to the date of commencement of the action in which it is rendered or the action in which it is to be given effect." *Cowan v. Ernest Codelia, P.C.*, 149 F. Supp. 2d 67, 74-75 (S.D.N.Y. 2001) (quoting Restatement (Second) of Judgments §14; citing *Williams v. Ward*, 556 F.2d 1143, 1154 (2d Cir. 1977)). Thus, *res judicata* may apply as long as the final judgment in one action precedes judgment in the pending action, even if the pending action was commenced earlier. *Id.* Further, a dismissal of an action for frivolousness under the *informa pauperis* statute, 28 U.S.C. § 1915 (e), "could . . . have a *res judicata* effect on frivolousness determinations for future *in forma pauperis*" actions. *Cieszkowska v. Gray Line New York*, 295 F.3d 204, 205-06 (2d Cir. 2002) (quoting *Denton*, 504 U.S. at 34).

---

[15] For the doctrine of *res judicata* to apply, the parties in the current and former litigation must be the same or in privity, such that their interests in the prior action were adequately represented. *Cameron v. Church*, 253 F. Supp. 2d 611, 619 (S.D.N.Y. 2003); *see also Valle v. Bally Total Fitness*, No. 01 Civ. 11614 (RCC) (KNF), 2003 U.S. Dist. LEXIS 4188, at *11 (S.D.N.Y. Mar. 13, 2003) (Report & Recommendation) ("[A]lthough the City was not named as a defendant in plaintiff's prior action, the City is in privity with the NYPD because the City's interests were represented adequately in the prior litigation by the NYPD."), *adopted by* 2003 U.S. Dist. LEXIS 17093 (S.D.N.Y. Sept. 29, 2003).

The Second Circuit has stated that the standard for determining whether the first judgment has preclusive effect depends "in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *N.L.R.B. v. United Technologies Corp.*, 706 F.2d 1254, 1260 (2d Cir. 1983) (citations omitted); *see also Marvel Characters*, 310 F.3d at 287 ("To determine whether two actions arise from the same transaction or claim, 'we look to whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations.") (citation omitted); *Cameron*, 253 F. Supp. 2d at 619 (*res judicata* precludes the relitigating of "cases that arise from the same 'operative nucleus of fact'") (citations omitted).  Thus, "[e]ven claims based upon different legal theories are barred provided they arise from the same transaction or occurrence." *Cieszkowska*, 295 F.3d at 205 (internal quotation marks and citation omitted).

> **B.** **Tolessa's Claims**

> > **1.** **Discriminatory Termination and Retaliation**

It would be appropriate for the Court to dismiss both Tolessa's termination and retaliation claims as "frivolous" under 28 U.S.C. § 1915(e)(2)(B)(i), as they appear to be based on the same broad accusations in the 2006 Complaint that were already found to be the "product of delusion or fantasy."  (*See* Order of Dismissal, at 4.)  As is apparent from paragraphs 5-7 of Tolessa's Attachment "5," his termination claim is based on allegations that the FBI and NYPD acted as "Conspirators" who plotted to fire him by killing him.  These allegations, together with Tolessa's similarly delusional allegations regarding the nature of the retaliation he allegedly

suffered at the hands of the FBI and NYPD for filing a CCRB complaint, are nearly identical to the allegations that formed the basis of his 2006 Complaint, and are just as "frivolous" within the meaning of 28 U.S.C. § 1915(e)(2)(B)(i).[16]

Moreover, even under the liberal *pro se* pleading standards, Tolessa's termination and retaliation claims do not state viable claims against HRA.  Tolessa expressly states in his 2005 Complaint that his retaliation claim relates to conduct by FBI and the NYPD (*see* 2005 Compl., ¶ 4), and he nowhere mentions any retaliation by HRA.  Moreover, Tolessa filed his SDHR charge only *after* he stopped working at HRA, and so it is all the more unclear what protected activity Tolessa could even allege as the basis for retaliation by HRA.  *See Boyce-Idlett v. Verizon Corporate Servs. Corp.*, No. 06 Civ. 975 (DAB) (KNF), 2007 U.S. Dist. LEXIS 64819, at *24 (S.D.N.Y. Aug. 30, 2007) (where filing of SDHR charge "occurred after the plaintiff's employment was terminated, and subsequent to all the instances of alleged discriminatory conduct asserted in the SDHR charge, [filing of charge] cannot provide the basis for any retaliation claims").  Accordingly, under the notice pleading standard of Rule 8(a)(2), Tolessa has failed to allege any facts adequate to put HRA on notice of the grounds upon which his retaliation claim rests, and therefore this claim should be dismissed.  *Saidin v. New York City Dep't of Educ.*, No. 06 Civ. 6974 (VM), 2007 U.S. Dist. LEXIS 55091, at * 9 (S.D.N.Y. Jul. 30, 2007) (dismissing retaliation claim as vague and conclusory, where plaintiff provided no "factual detail describing what specific act of retaliation [occurred] . . . and who actually engaged in the claimed retaliation").  Similarly, Tolessa provides no factual allegations to support his

---

[16] There is no argument or indication that any of Tolessa's claims are "malicious" under 28 U.S.C. § 1915(e)(2)(B)(i).

termination claim, other than to refer to the purportedly "conspiratorial" conduct of the FBI and NYPD.  Thus, this claim, too, does not satisfy even "notice pleading" requirements.

Tolessa's termination and retaliation claims may also be subject to dismissal under principles of *res judicata,* as they plainly arise out of the same events or transactions alleged in the 2006 Complaint.  In order to address that question, however, the Court would first have to determine whether HRA (the only defendant named in this action) and the FBI and NYPD (who were named as defendants in the 2006 action) should be deemed in "privity" for *res judicata* purposes.  (*See* n.15, *supra*.)  The Court need not reach that issue, given that these claims, in any event, should be dismissed under 28 U.S.C. § 1915(e).

>    2.    **Discrimination in the Terms and Conditions**
>          **of Employment, and Failure To Promote**

HRA argues that Tolessa's 2005 Complaint should be dismissed not just in part, but in whole, based on the dismissal of his 2006 Complaint.  Setting aside the discriminatory termination and retaliation claims, however, the remainder of the allegations of the 2005 Complaint are fundamentally different from those of the dismissed 2006 Complaint.  As stated in the Order of Dismissal, Tolessa "essentially allege[d] [in his 2006 Complaint] that the entire police department conspired against him in a 'campaign' to intimidate, harass and threaten him." (*See* Order of Dismissal, at 3.)  This is not the core of what Tolessa appears to allege in his 2005 Complaint, and certainly not the crux of his claims that he suffered unequal treatment on the job and was not promoted for discriminatory reasons.

The Complaint in this action specifically includes Title VII claims against HRA, regarding the terms and conditions of Tolessa's employment and HRA's purported discriminatory refusal to promote him.  Liberally construed, these claims implicate legally

17

protectable interests under Title VII, *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434,

438 (2d Cir. 1998), and thus cannot be found to rest on "indisputably meritless legal theor[ies],"

*Nance*, 912 F.2d at 606.  Nor can it be said that Tolessa's factual allegations concerning these

claims are, on their face, a "product of delusion or fantasy," like the allegations made in his 2006

Complaint.  Unlike the 2006 Complaint, which rested entirely on allegations against the FBI and

NYPD that were obviously baseless, the Complaint at issue here, in its most basic reading, rests

on factual allegations that, regardless of whether they can ultimately be proven, are sufficient to

present a coherent basis for claims of discrimination by an alleged employer.  In fact, in his

opposition papers, Tolessa has clarified that the "central issue" of his 2005 pleading is HRA's

discriminatory treatment of him, including its discriminatory failure to promote him, and that his

Complaint in this action should not even be read to concern allegations against the FBI or

NYPD.  (*See* Opposition, at 2.)

   As for Tolessa's hand-written attachment to the 2005 Complaint (the FBI/NYPD

Attachment), which is the portion of his 2005 pleading that is most substantively similar to the

2006 Complaint, it does not appear that Tolessa even intended to incorporate into his 2005

Complaint the allegations contained in that attachment, much less make it integral to all his

claims.  Tolessa never expressly referred to FBI/NYPD Attachment in his form Complaint, and

he labeled that attachment with a separate caption, "Tolessa v. FBI and the NYPD," suggesting

that it pertained to a different matter.[17]  Thus, the FBI/NYPD Attachment – which appears

wholly unrelated to his Title VII allegations against HRA – should not render frivolous Tolessa's

---

[17] In light of the inclusion of this caption, Tolessa may have been attempting to initiate a
separate action or at least alerting the Court that he was planning on doing so.

otherwise non-frivolous allegations in his 2005 Complaint.  Accordingly, the Court should not dismiss Plaintiff's claims challenging the terms and conditions of his employment and his failure to be promoted, as "frivolous or malicious," or as failing to state a claim.

Nor should the Court dismiss these claims as barred by *res judicata,* regardless of whether the defendants in both actions could be found to be in privity, as the claims do not relate to the same "transactions or series of transactions" as those that formed the basis of the 2006 Complaint.  Although, in his 2006 Complaint, Tolessa did mention at several points that the NYPD and FBI plotted to interfere with his "employment," nowhere did he mention even the basic facts of his employment –  such as where he worked – let alone any details, such as the nature of his responsibilities, the circumstances of his non-promotion, or the types of workers who were promoted when he was not.  Instead, the 2006 Complaint made allegations concerning a purported wide-spread campaign of harassment by the FBI and the NYPD (*see* 2006 Complaint, at 1-2), allegations that had little, if anything to do with the question of whether Tolessa was discriminated against by HRA, as his alleged employer, in the workplace.

The evidence required to support Tolessa's employment discrimination claims is not based on or linked to the factual allegations in his 2006 Complaint.  *See Thomas v. Metro Dist. Comm'n*, No. 3:04 Civ. 980 (DJS), 2005 U.S. Dist. LEXIS 10990, at *2 (D. Conn. Jun. 7, 2005) (where "facts essential to proving" claims in subsequent employment discrimination claim were not necessarily present in first claim, subsequent claim was not barred by *res judicata*).  Further, Tolessa's 2005 Complaint does not merely allege different legal theories arising from the same underlying facts, but instead contains "entirely independent and different cause[s] of action based on separate transactions and a different set of facts."  *Powers v. City of New York*, No. 04

19

Civ. 2246 (NGG), 2007 U.S. Dist. LEXIS 27704, at *22 (E.D.N.Y. Mar. 30, 2007) (quoting

*Gonzalez v. City of New York*, 396 F. Supp. 2d 411, 420 (S.D.N.Y. 2005)).

For these reasons, the Court should not bar, either as frivolous or inadequate, or under

principles of *res judicata,* Tolessa's employment discrimination claims that challenge the terms

and conditions of his employment and HRA's alleged failure to promote him.

## II.   TOLESSA'S RACE AND COLOR CLAIMS
##       SHOULD NOT BE DISMISSED AS UNEXHAUSTED.

HRA also argues that, should Tolessa's 2005 Complaint survive, despite the dismissal of

his later Complaint, at a minimum his "race" and "color" claims should be dismissed under

Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction because Tolessa never raised these

claims in his SDHR charge.  (*See* Mem. at 4.)  This argument should be construed by the Court

as one made under Fed. R. Civ. P. 12(b)(6) for a failure to exhaust administrative remedies.

*Francis v. City of New York*, 235 F.3d 763, 768 (2d. Cir. 2000)) ("[P]resentation of a Title VII

claim to the EEOC is not a jurisdictional prerequisite, but only a precondition to bringing a Title

VII action that can be waived by the parties or the court.") (internal quotation marks and citation

omitted);[18] *accord Sharabura v. Taylor*, No. 03 Civ. 1866 (JG), 2003 U.S. Dist. LEXIS 16515, at

*5 -6 (E.D.N.Y. Sept. 16, 2003) (construing 12(b)(1) motion to dismiss for lack of subject matter

jurisdiction as one under 12(b)(6) for failure to exhaust administrative remedies) (citing

*Francis*).  And, as explained below, the argument should be rejected.

---

[18] In *Francis*, the Second Circuit noted that some of its prior decisions referred to the
exhaustion requirement as "jurisdictional," but that "these opinions [had] done so only in
circumstances where the disposition was not affected by whether or not those requirements were
jurisdictional in character."  *Id.* at 768 n.2.

A plaintiff cannot ordinarily raise a Title VII claim in federal court without first exhausting available administrative remedies, as exhaustion is considered "an essential element of Title VII's statutory scheme."[19]  *Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993), *superseded by statute on other grounds as stated in Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684 (2d Cir. 1998).  This statutory requirement is designed to "to give the administrative agency the opportunity to investigate, mediate, and take remedial action."  *Stewart v. United States Immigration & Naturalization Serv.*, 762 F.2d 193, 198 (2d Cir. 1985).  The Second Circuit has recognized, however, that "claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are reasonably related to those that were filed with the agency."  *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (internal quotation marks and citation omitted).  This exception to the exhaustion requirement "'is essentially an allowance of loose pleading' and is based on the recognition that 'EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims [he] is suffering.'"  *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003) (quoting *Butts*, 990 F.2d at 1402).

"A claim is considered reasonably related if the conduct complained of would fall within the scope of the [administrative agency] investigation which can reasonably be expected to grow out of the charge that was made."  *Fitzgerald v. Henderson*, 251 F.3d 345, 358-59 (2d Cir. 2001)

---

[19] A plaintiff in New York, a state in which there is an agency authorized to investigate discrimination allegations, may exhaust administrative remedies by filing a charge with either the SDHR or EEOC.  *See Bailey v. Colgate-Palmolive* Co., No. 99 Civ. 3228 (CBM), 2003 U.S. Dist. LEXIS 8175, at *20-21 (S.D.N.Y. May 14, 2003).

(internal quotation marks and citation omitted).  Thus, the focus in determining whether claims are reasonably related "should be 'on the factual allegations made in the EEOC charge itself, describing the discriminatory conduct about which a plaintiff is grieving.'"  *Deravin*, 335 F.3d at 201 (quoting *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 637 (9th Cir. 2002)).

In *Deravin*, the Second Circuit held that a claim of race discrimination fell within the scope of the EEOC's investigation of a claim of national original discrimination.  *Deravin*, 335 F.3d at 203.  There, the plaintiff, an African-American, alleged race discrimination in his federal complaint, but had only checked boxes marked "retaliation" and "national origin" as the grounds for his discrimination in his EEOC charge.  *Id.* at 199.  While not expressly indicating his race, the plaintiff had alleged in his EEOC charge that Irish-Americans received preferential treatment.  *Id.*  The court held that the plaintiff's race claim was "reasonably related" to his national origin claim, concluding that "an allegation of preferential treatment for Irish-American employees fairly encompasses a claim of discrimination against minority employees [because the plaintiff's] . . . allegations were sufficient to alert the EEOC to look for potential race discrimination."  *Id.* at 202-03.  In reaching this holding, the Second Circuit emphasized that "courts should not attempt to draw overly fine distinctions between race and national origin as part of the threshold exhaustion inquiry prior to the full development of a plaintiff's claims, given the potential overlap between the two forms of discrimination, and the 'loose pleading' which is permitted in the EEOC complaint."  *Id.* at 202.[20]

_____

[20] National origin discrimination is defined by the EEOC as "the denial of equal employment opportunity because of an individual's, or his or her ancestor's, place of origin; or because an individual has the physical, cultural or linguistic characteristics of a national origin group."  29 C.F.R. § 1606.1.

In this case, Tolessa expressly alleges race and color discrimination claims in his 2005 Complaint, but not in his SDHR charge.  Tolessa did assert in his SDHR charge, however, that another temporary employee, whom he identified as Puerto Rican, was promoted while he was not.  He further alleged that, to his knowledge, not one of the promoted temporary employees was either African or Orthodox Christian.[21]  Although these claims did not mention race, under the principles of *Deravin*, they were sufficient to alert the administrative agency to possible race and color discrimination claims in conducting its investigation.  *Deravin*, 335 F.3d at 199; *see also Sharabura*, 2003 U.S. Dist. LEXIS 16515, at *9 (holding EEOC was alerted to race and color claims where "[a]n investigation of [plaintiff's] allegations – that the Russian nurses were fired and replaced by African-American nurses and that Russian nurses were forbidden to speak Russian but that non-Russian nurses were permitted to speak Creole – would surely fall within the [scope of the EEOC investigation growing out of the national origin discrimination claim]").

Accordingly, Tolessa's race and color claims should not be dismissed for failure to satisfy Title VII's administrative exhaustion requirements.[22]

---

[21] In his SDHR charge, Tolessa referred to his national origin as African (*see* SDHR charge at 1), but in his 2005 Complaint he identifies his national origin as Ethiopian (*see* Complaint, ¶ 7).

[22] In its Reply, HRA – for the first time – also argues that some of Tolessa's allegations are time-barred under Title VII because they predate his filing of an SDHR charge by more than 300 days.  (*See* Reply at 3-4.)  Given that Tolessa has had no opportunity to respond to this argument, however, and given that there are certain exceptions to the 300-day filing requirement, *see Drees v. County of Suffolk*, No. 06 Civ. 3298 (JFB) (ETB), 2007 U.S. Dist. LEXIS 46618, at *22-28 (E.D.N.Y. Jun. 27, 2007), I recommend that the Court decline to consider, for the purposes of this motion, HRA's argument concerning time-barred conduct, *see Landau v. New Horizon Partners, Inc.*, 2003 U.S. Dist. LEXIS 15999, No. 02 Civ. 6802 (JGK), 2003 U.S. Dist. LEXIS 15999, at *31-32 (S.D.N.Y. Sept. 8, 2003) (rejecting "argument . . . raised for the first time in . . . reply").

## **CONCLUSION**

For all of the foregoing reasons, I respectfully recommend that defendant's motion to dismiss the Complaint be granted with respect to Tolessa's retaliation and termination claims, and otherwise denied.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Colleen McMahon, United States Courthouse, 500 Pearl Street, Room 640, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 525, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge McMahon. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
　　　　September 28, 2007

　　　　　　　　　　　　Respectfully Submitted,


　　　　　　　　　　　　*Debra Freeman*
　　　　　　　　　　　　DEBRA FREEMAN
　　　　　　　　　　　　United States Magistrate Judge

24

Copies to:

Hon. Colleen McMahon, U.S.D.J.

Mr. Dibissa B. Tolessa
George Dally House, Inc.
269 East 4th Street
New York, NY 10009

Amy Grossberg, Esq.
Ivan A. Mendez, Jr., Esq.
Assistant Corporation Counsel
City of New York Law Department
100 Church Street
New York, NY 10007