UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------x

DIBISSA TOLESSA,

        Plaintiff,

-against-                        05 Civ. 9492(CM)(DCF)

NEW YORK CITY HUMAN RESOURCES
ADMINISTRATION (HRA),

        Defendant.

----------------------------------------x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/1/07

## DECISION AND ORDER DISMISSING COMPLAINT

McMahon, J.:

    I have before me the Report and Recommendation of The Hon. Debra C. Freeman, U.S.M.J., in which the learned Magistrate Judge recommends granting in part and denying in part the defendant's motion to dismiss the complaint in this action, in which plaintiff pro se alleges that his former employer discriminated against him on the basis of his race, national origin, and "especially religion!" (Cplt., Docket #1, p.3).[1] The complaint also alleges retaliation. Judge Freeman recommended dismissing the claims insofar as they alleged discriminatory termination and retaliation, on the ground that they were directed at parties not named as defendants and were barred by res judicata. Otherwise, Judge Freeman recommended that the motion be denied.

    The City has filed objections to the Report and Recommendation, which I have also reviewed. Plaintiff filed a document (Docket #27), in which he recommends that I adopt Judge Freeman's Recommendations.

    I accept the Report and adopt its recommendation that the termination and retaliation claims be dismissed for the reasons stated in the Report. Because I agree with the City's objections to the remainder of Judge Freeman's Report, I decline to adopt her recommendation regarding the allegations of discrimination in the terms and conditions of plaintiff's employment and discriminatory failure to promote, and I dismiss those claims as well. The complaint must be dismissed in its entirety. The City's motion to dismiss is, therefore, granted.

---

[1] Plaintiff put his age and date of birth in the places on the form where a person alleging age discrimination would do so, but he does not purport to bring an ADEA claim and alleges no facts tending to support such a claim.

Copies mailed/faxed/handed to counsel on 11/1/07

## The Complaint

The complaint in this action is a form complaint provided to pro se litigants alleging employment discrimination. The action is brought pursuant to Title VII. It names only HRA as a defendant.

Plaintiff alleges that he was discriminated against on the basis of failure to promote, failure to accommodate a disability, unequal terms and conditions of employment, and termination. He also alleges retaliation "by the FBI and the NYPD for my complaint to the CCRB." The NYPD is the New York Police Department, and the CCRB is the Civilian Complaint Review Board, which handles complaints of police misconduct in New York City. The alleged discrimination occurred on "6/10/02-6/21/02 and many times. I list on the attached memo." Plaintiff alleges that his work "ended on 5/29/04."

Plaintiff attaches a lengthy narrative to the form complaint. Rather than attempt to summarize it, I am reproducing it here in full:

I. I worked for the HRA for six years:

(A) Starting around 9/5/1998 – 5/15/00, I worked as a WEP worker. I was on Public Assistance and was assigned to help case workers.

(B) 5/15/00 - 8/21/01, I was hired by a Temp. Agency called Wildcat that had a contract with the City.

(C) On 8/21/01, Wildcat lost the contract with the City and another Temp. Agency called Paywise took over.

(D) Regardless of which Temp. Agencies come and go, after two years of Services, the HRA promotes Temp. Employees to permanent positions and after that the promoted Temps join the Union.

II. And between 5/15/00 and 5/29/04, the HRA promoted all my Temp. coworkers with whom I worked on the same works and projects that required the same qualifications and singled me out for discrimination (a) differential pays, (b) differential treatments, and (c) termination.

(2) On 6/10/02, on the meeting with my unit, the supervisor announced that she received the HRA's announcements that I and my other Temp. coworkers are promoted. Then, she and others on the meeting congratulated us both.

(3) But, it turned out that my promotion was conditioned on my accepting religion. And when I refused to accept such a condition, the HRA promoted my coworkers with who I was declared promoted and withdrew mine. And I was told that the HRA has never imposed such a condition upon any employee it hired or promoted but only on

me.

(4) And to the end of my work (5/29/04), the abuses and discriminations against me are continued.

(5) On 5/25/04, the conspirators plotted to fire me by killing me: I left my locked bag at my desk as usual and went out to lunch. They obtained duplicate key, unlocked my bag, put lethal poisons in my water bottle, and locked the bag. But, they made some errors that helped me suspect foul-play, detect the poisons, and escape the murder.

(6) Three days later (5/29/04), when what they expected -- which is my death – didn't happen, the plotters threw me out of work.

(7) All of these crimes and conspiracies against me are orchestrated by the FBI and the NYPD who caused the HRA and the Administration to join them against me.

When I contacted the Division of Human Rights, I explained to it what happened and requested it for representation because I believed (from its name) that it gives all kinds of representations involving Human Rights Abuses. But it told me that it lacks jurisdiction to assist me with my case involving the FBI and the NYPD other than to assist me with issues relating to Employment Discrimination. And I agreed to that with intent to get back my work while pursuing my case against the FBI and the NYPD in the Court of Law.

Yet, both the Division and the EEOC deliberately and grossly misrepresented my case and refused to issue the Right to sue letter for me as well.

Plaintiff attached a second document to his complaint. It appears to be a draft of a complaint against the FBI and the NYPD. The document alleges that, in violation of the First Amendment to the United States Constitution, the FBI and the NYPD "plotted against me to impose religion on me. And when I resisted their plot, they resorted to suffocating me and lynching me." This complaint goes on to explain that, as long ago as 1985, plaintiff was involved in a racist sect (church) that subjected him to "systematical abuses - the explanation of which is very long." After plaintiff left the sect, he claims the FBI and the Police attempted to induce him to return to the sect and to reimpose the religion from which he dissented. This campaign allegedly increased after 9/11, after the terrorist attack on the World Trade Center, the police and the FBI (having nothing better to do) allegedly sent plaintiff poisoned mail, terrorized him in his apartment, caused him to become homeless, poisoned his rented rooms "with increasing intensity" (and with the assistance of landlords and other tenants), and instigated "vicious conspiracies from my employees and the Administration against me and threw me out of work and deprived me of livelihoods." The prayer for relief asks for an emergency restraining order to stop the FBI and the police from poisoning plaintiff's rooms and permitting him to return to work pendente lite.

This document does not appear to have been separately filed; it bears no index number;

and as far as the court is aware, there is no independent lawsuit making these allegations. Judge Freeman treated it as an exhibit to plaintiff's complaint against HRA, and so do I.

Plaintiff avers in his complaint to this court that he first field a charge with the New York State Division of Human Rights or the New York City Commission on Human Rights on August 23, 2004. There is no copy of such a charge in the record. Judge Freeman refers in her Report to a Verified Complaint that was filed with the SDHR on January 24, 2005, which is appended to the City's motion as Ex. B. I will take that as the date of the administrative complaint.

The Verified SDHR Complaint alleges that, even though plaintiff received "nothing but satisfactory performance evaluations," he was "not promoted" to a permanent position, and was later discharged, because he was "an Orthodox Christian and African." He claimed that he and a person named Anabel "Doe," of Puerto Rican ancestry and unknown creed, were told that they were to be promoted on June 10, 2002, but that only Ms. Doe received that promotion; he did not. Plaintiff also complained of religious harassment from co-workers, in the form of unwelcome proselytizing

On April 15, 2005, the SDHR found no probable cause to believe that plaintiff had been discriminated against and dismissed his complaint. The EEOC adopted the SDHR's findings and issued plaintiff a right to sue letter, which was mailed on August 30, 2005. This action was filed in November 2005. The City moved to dismiss this action on November 21, 2006. Papers in support of and in opposition to the motion can be found at Docket Nos. 14-17.

### The 2006 Action

In addition to the instant action, plaintiff commenced a second lawsuit in this Court by filing a more fulsome version of the complaint against the FBI and the NYPD that he had attached to the complaint in this action. The complaint in the 2006 Action claimed, inter alia, that the police worked "In collusion with my employers and the administration" to "use my work place[] as the battleground against me."

The 2006 Action was dismissed sua sponte by then-Chief Judge Mukasey, by order dated February 10, 2006, on the following grounds: (1) the claims against the FBI were barred by sovereign immunity; (2) the claims against NYPD were frivolous and the product of delusion and fantasy.

### Disposition of the Pending Motion to Dismiss

As noted above, the complaint, at ¶ 4, alleges that he was subjected to discrimination in four separate ways: failure to promote; termination of employment; unequal terms and conditions of employment; and retaliation. Rather than recite in detail Judge Freeman's various findings and recommendations, I turn immediately to my disposition of these substantive allegations.

1. Plaintiff's claim for **failure to promote** him is dismissed because it is time barred. Plaintiff was allegedly told in June 2002 that he was going to be promoted, but no promotion was

forthcoming (allegedly because plaintiff refused to change his religion). As Judge Freeman correctly found, Plaintiff first complained to the SDHR in January 2005 – more than 300 days after the allegedly discriminatory failure to promote.[2] Failure to promote is not a continuing violation; the act of discrimination occurred when the Puerto Rican lady, Anabel "Doe," was promoted but plaintiff was not. It is clear from the text of the complaint (See especially, Docket #1, Response to Paragraph 5, first continuation page attached), that this occurred at or about the time the announcement was made, during the late spring/early summer of 2002. By the time plaintiff complained to the SDHR, the statute of limitations on his failure to promote claim had already run.

2. Plaintiff's claim for **discriminatory termination** of his employment is dismissed because, as Judge Freeman found, it is predicated on the accusation that the FBI and the NYPD conspired with HRA to cause plaintiff to lose his job because he would not convert from Orthodox Christianity back to the "racist sect" he had left almost two decades earlier. Chief Judge Mukasey found these contentions to be the product of "delusion or fantasy" insofar as they were alleged against the NYPD and the FBI; they are no less delusional or fantastic as alleged against HRA. 28 U.S.C. § 1915(e)(2)(B)(i).

3. Plaintiff's claim for **retaliation** is dismissed because, on the face of the complaint, it is not asserted against defendant HRA, but only against "the FBI and the NYPD." Moreover, the purported retaliation is identified as being "for my compt. to the CCRB." Retaliation for making a complaint to the Civilian Complaint Review Board has nothing to do with plaintiff's employment and is not actionable under Title VII. Nothing in the complaint filed with this court tends to show that plaintiff was retaliated against by the HRA.

4. This leaves plaintiff's claim that he was subjected to "**unequal terms and conditions of employment.**" In the complaint itself (Docket #1, Response to Paragraph 5, first continuation page attached), plaintiff alleges that between May 2000 and May 2004, he was "singled out for discrimination" by receiving "differential pays," "differential treatments," and "termination." The last allegation was disposed of above, so I here limit myself to the claims of unequal pay and unequal "treatments."

To see whether these claims were administratively exhausted I must turn to the complaint that was filed with the SDHR. That document (Ex. B to the Motion to Dismiss, Docket #14) complains that HRA failed to promote plaintiff and that non-Orthodox Christian co-workers of plaintiff left religious pamphlets on his desk and tried to discuss religion with him. Plaintiff's failure to promote claim is dealt with above; it was untimely when brought to the attention of the SDHR and so cannot be adjudicated in this court. The administrative complaint says nothing about unequal pay, so to the extent that unequal pay is alleged to be a "term and condition" of plaintiff's employment, the claim was not exhausted and this court has no jurisdiction to entertain it.

---

[2] Even if plaintiff's complaint were correct and he made his first complaint to SDHR in August 2004, his claim of failure to promote would be time barred.

This leaves only plaintiff's claim that he was discriminated against in the terms and conditions of his employment. The complaint filed in this action does not specify what terms and conditions of employment other than pay were allegedly impacted by discrimination, but the SDHR complaint complained of plaintiff's being subjected to unwanted discussions of religion and unwanted "gifts" of religious tracts, which were left on his desk by "co-workers" (otherwise unidentified) during the lunch hour. Construing the complaint liberally in favor of plaintiff – as I must because he is pro se, see Erickson v. Pardus, 127 S. Ct. 2197 (2007) – this is sufficient to state a claim for relief. Title VII prohibits employers from discriminating against individuals because of their religion in hiring, firing, and other terms and condition of employment. Additionally, employers must take steps to prevent religious harassment of their employees. While the SDHR dismissed this claim because there was no evidence that plaintiff ever complained to supervisors about this form of harassment, under the scheme set up by Congress, plaintiff now gets a "second bite" at that particular "apple," and will have his opportunity to prove that this was employer-sanctioned harassment.

I note that neither the instant complaint nor the complaint filed with the SDHR gives any dates when incidents of unwelcome religious harassment occurred. Plaintiff has to prove that this harassment took place during the 300 day window prior to the date of the filing of his SDHR charge or the claim will be barred by the statute of limitations.

Finally, the City has objected to Judge Freeman's conclusion that plaintiff did exhaust his claims of race and color discrimination. I agree with the City that plaintiff did not exhaust those claims by complaining of discrimination on the basis that he was "African." I further agree with the City that the Magistrate Judge erred when she concluded that plaintiff's allegations in the SDHR complaint were sufficient to alert the administrative agency to possible race and color discrimination claims under the rule of Deravin v. Kerik, 335 F. 3d 195 (2d Cir. 2003). Plaintiff's mention of his African ancestry appears to raise some sort of national origin claim, an inference that is confirmed by the explicit mention of discrimination on the basis of national origin in ¶ 5 of the SDHR complaint, and by the comparison plaintiff draws between himself and Anabel "Doe," who is described as "Puerto Rican." As Africa is not a "nation" (for that matter, neither is Puerto Rico), the assertion would appear to be defective. Plaintiff may have intended the word "African" as a reference to his race/color, but Africans are of various races and colors, and the court cannot assume that plaintiff was complaining about racial discrimination. This is the more true because the substantive allegations in the complaint are all about religion. Therefore, any claim that plaintiff was discriminated against based on his race or color cannot be deemed exhausted, and to the extent she recommended otherwise, the Magistrate Judge was in error.

However, this particular issue is now moot. A claim of discrimination on any forbidden basis must be linked to some sort of action relating to plaintiff's employment. The only claim that remains alive in this action is plaintiff's claim that he was subjected to harassment by co-workers who left him religious pamphlets and who proselytized during the work day. No racial basis is alleged for this particular act of discrimination; it is purely religious discrimination. Accordingly, the fact that plaintiff failed to exhaust his claims of race-based discrimination is irrelevant to the disposition of the motion.

The defendant's motion to dismiss is granted except insofar as it sought dismissal of plaintiff's claim that he was discriminated against in the terms and conditions of his employment by virtue of his co-workers' religious proselytizing.

This constitutes the decision and order of the Court.

Dated: November 1, 2007

*[signature]*

U.S.D.J.

BY FIRST CLASS MAIL TO
    Dibissa B. Tolessa
    2070 Davidson Avenue
    Bronx, New York 10452

    Ivan A. Mendez, Jr. Esq.
    Corporation Counsel of the City of New York
    100 Church Street, Room 2-184
    New York, New York 10007-2601

BY HAND TO MAGISTRATE JUDGE FREEMAN